**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merilee J. Hartley,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV 14-2421-TUC-RM (LAB)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

The Magistrate Judge recommends that the District Court, after its independent review, remand this action for further proceedings. The Commissioner's finding that Hartley can perform medium work is not supported by substantial evidence.

PROCEDURAL HISTORY

Hartley filed her application for disability insurance benefits in September of 2009. (Tr. 241) She alleged disability beginning September 16, 2007, due to stroke and memory loss. (Tr. 310)

Her claim was denied initially (Tr. 130-133) and upon reconsideration (Tr. 135-137). Hartley requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on May 18, 2011. (Tr. 98)  In her decision, dated June 16, 2011, the ALJ found Hartley was not disabled. (Tr. 108) Hartley appealed, and the Appeals Council remanded the case for further proceedings on December 19, 2012. (Tr. 115-116)

Hartley appeared with counsel at a second hearing before ALJ Mathon on March 20, 2013. (Tr. 38)  In her decision, dated April 11, 2013, the ALJ again found Hartley was not disabled. (Tr. 18-29) Hartley appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5) Hartley subsequently filed this action appealing the Commissioner's final decision. (Doc. 1)

The court finds the ALJ's final decision is not supported by substantial evidence. Specifically, the decision does not provide substantial evidence for the ALJ's finding that Hartley can perform medium work and therefore can work as a hand packager or dining room attendant. (Tr. 29)

Claimant's Work History and Medical History

Hartley was born in July of 1949. (Tr. 59) She has a high school diploma and studied to be a legal secretary. (Tr. 60) She was 63 years old when the ALJ issued her opinion. (Tr. 29, 38, 39)

Hartley was employed as a clerical worker for approximately fifteen years. (Tr. 311) She had been working for two years as a data entry clerk at the Department of Veterans Affairs when she had a stroke. (Tr. 44, 252) When she returned to work, she was given a job doing timekeeping, which was intended to be easier for her. (Tr. 44) Unfortunately, she found the job difficult because she began transposing numbers. (Tr. 44) She eventually quit because she was "goofing up a lot." (Tr. 674) She now receives federal employee disability benefits. (Tr. 46, 123)

Mental Impairments

In April of 2008, Hartley was evaluated by Kathleen V. Prouty, Ph.D. (Tr. 466) She noted that Hartley "suffered from a series of cerebellar vascular infarcts over a two-year period, producing complaints of short-term memory problems." (Tr. 467) Prouty found some weakness in Hartley's ability to process visual stimuli, but she concluded this weakness was too slight to result in any functional limitations. (Tr. 469)

In May of 2008, Randall J. Garland, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 470-482) He found Hartley was only mildly limited in her "activities of daily living" and in her ability to maintain "concentration, persistence or pace." (Tr. 480) He concluded her mental impairments were not severe. (Tr. 470)

In October of 2008, Hubert R. Estes, M.D., reviewed the medical record and affirmed Garland's assessment. (Doc. 557)

In December of 2009, Hartley was examined by James Armstrong, Ph.D., for the disability determination services. (Tr. 643) Armstrong diagnosed "cognitive disorder NOS, mild, post-stroke." (Tr. 647) He opined Hartley's memory was somewhat limited. (Tr. 648)

In January of 2010, Ronald G. Nathan, M.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 650-662) He found Hartley was only mildly limited in her "activities of daily living" and in her ability to maintain "concentration, persistence or pace." (Tr. 660) He concluded her mental impairments were not severe. (Tr. 650)

In April of 2010, Hartley was evaluated by James Rau, Ph.D., for the state disability determination services. (Tr. 664) He summarized her condition as follows: "History of transient ischemic attacks and a stroke affecting the right hemisphere at least on one occasion, and she also has sleep apnea and diabetes, and she describes decreased strength in the right hand." (Tr. 669) He found Hartley's mental abilities to be largely intact with the exception of her ability to "graphically reproduce visual data." (Tr. 671) In this area she is "quite limited." (Tr. 671) Rau diagnosed "Cognitive Disorder NOS." (Tr. 669)

Physical Impairments

- 3 -

In March of 2008, John Fahlberg, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 458-465) He concluded Hartley could lift and/or carry 20 pounds occasionally and 10 pounds frequently, which is consistent with light work. (Tr. 459) He based this limitation on Hartley's history of transient ischemic attacks – mini-strokes. *Id*. He opined that working at a higher exertional level would increase the risk of another stroke. *Id*. He further concluded Hartley should never climb ladders, rope, or scaffolds. (Tr. 460) She must avoid concentrated exposure to extreme heat, vibration, and hazards such as machinery and heights. (Tr. 462)

In October of 2008, Robert S. Hirsch, M.D., reviewed the record and affirmed Fahlberg's assessment. (Tr. 558)

In November of 2009, Vivienne J. Kattapong, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 635-642) She concluded Hartley could lift and/or carry 50 pounds occasionally and 25 pounds frequently, which is consistent with medium work. (Tr. 636) She should only occasionally balance or climb ladders, ropes, or scaffolds. (Tr. 637) She must avoid even moderate exposure to hazards such as machinery and heights. (Tr. 639)

In May of 2010, Hartley was examined by Dennis Thrasher, M.D., for the disability determination service. (Tr. 673-675) Thrasher's assessment reads as follows: "(1) History of cerebrovascular accident with no objective deficits noted on clinical examination." (Tr. 675) "She complains of problems with cognition and memory." *Id*. "(2) Metabolic dysfunction with associated hypertension, diet-controlled diabetes, and hyperlipidemia." *Id*. He opined that Hartley has no lifting/carrying restrictions. (Tr. 676) He did not specifically state how much weight she can lift and/or carry either occasionally or frequently. (Tr. 676) He opined she should never climb ladders, ropes, or scaffolds based on her use of psychotropic medication to treat "mild depression." (Tr. 673, 677)

Hearing Testimony

1    On May 18, 2011, Hartley appeared with counsel at a hearing before ALJ Lauren
2 Mathon. (Tr. 56)  Hartley testified to the following:

3    She was born in July of 1949.  (Tr. 59)  She is 5'2" and weighs approximately 175
4 pounds. (Tr. 59) She has a high school diploma and trained as a legal secretary. (Tr. 60) Since
5 1996, Hartley had been employed as a clerical worker. (Tr. 61)  She did typing and filing, and
6 she answered the phone. (Tr. 62) She was not required to lift anything more than "a few sheets
7 of paper at [a] time." (Tr. 63)  Hartley's previous employment falls under the category of
8 sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than
9 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and
10 small tools.").

11    Hartley stopped working in September of 2007 after she suffered a stroke.  (Tr. 63)
12 Now, she no longer uses a computer and has trouble with numbers. (Tr. 66) She has difficulty
13 concentrating and finds it difficult to read.  (Tr. 67)

14    On a normal day, she watches her grandchildren in the morning, and then she drives them
15 to school.  (Tr. 68)  She watches TV and takes a lot of naps.  (Tr. 68)   Hartley attends her
16 grandchildren's ball games, but she finds it difficult to stay engaged the entire time.  (Tr. 71)

17    Hartley testified that she could not return to any of her previous jobs because her mind
18 is no longer sharp. (Tr. 72)  She did not believe she could do any other work because she has
19 to take naps to refresh herself. (Tr. 72)  Also, she has difficulty standing for long because her
20 back gets sore. (Tr. 73)  When questioned about her exertional ability, she explained that she
21 washes the laundry every week and can lift a laundry basket weighing 20 pounds. (Tr. 74) The
22 ability to lift 20 pounds occasionally is consistent with the ability to perform light work. *See*
23 20 CFR § 404.1567 ("Light work involves lifting no more than 20 pounds at a time with
24 frequent lifting or carrying of objects weighing up to 10 pounds.").

25    On March 20, 2013, Hartley appeared with counsel at a second hearing before ALJ
26 Lauren Mathon. (Tr. 38)  She testified that her condition has not changed significantly since
27 her first hearing. (Tr. 40)  She still finds herself easily confused if she is tired or stressed. (Tr.
28 43)

After her stroke, she was offered a position doing timekeeping. (Tr. 44) Unfortunately, she had difficulty with the numbers. (Tr. 44)

Hartley testified she could not perform any job full time because "I get tired really easy, and my brain – what I call goes to mush, and then everything gets confused, and messed up." (Tr. 46)

Jacklyn Benson-Dehaan testified as a vocational expert. (Tr. 47) She explained that Hartley's previous jobs were sedentary – secretary, DOT 201.362-030, and receptionist, DOT 237.367-038. (Tr. 48) Benson-Dehaan opined that a person with Hartley's age, education, and vocational background, who could perform *medium* work, who could never use ladders, ropes, or scaffolds, who should avoid hazards and concentrated exposure to irritants, dust and fumes, and who had moderate mental limitations, could still work as a hand packager, DOT 920.587-018, or food service worker, DOT 311.677-018. (Tr. 48-49) (emphasis added) A person limited to *light* work could perform neither job. *Id*.

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that

1 the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20
2 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment
3 meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and
4 no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the
5 claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the
6 next step.

7 The fourth step requires the ALJ to consider whether the claimant has sufficient residual
8 functional capacity (RFC)[1] to perform past work. 20 C.F.R. § 404.1520(a)(4). If yes, then the
9 claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move
10 to the fifth step, which requires consideration of the claimant's RFC to perform other substantial
11 gainful work in the national economy in view of claimant's age, education, and work
12 experience. 20 C.F.R. § 404.1520(a)(4).

13 In determining whether the claimant retains the ability to perform other work, the ALJ
14 may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20
15 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846
16 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional
17 requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d
18 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based
19 on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a
20 valid basis for denying claims where they completely and accurately describe the claimant's
21 abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the
22 claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115
23 (9th Cir. 2006).

24 If the claimant has significant non-exertional limitations, the grids do not apply. *Penny*
25 *v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that

---

28 [1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 7 -

1  do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
2  1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-
3  exertional limitations prevent the claimant from performing the full range of work in any
4  exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
5  *Id.* at 1341.

The ALJ's Findings

At step one of the disability analysis, the ALJ found Hartley "did not engage in substantial gainful activity during the period from her alleged onset date of September 16, 2007 through her date last insured of December 31, 2012." (Tr. 20) At step two, she found Hartley "had the following severe impairments: transient ischemic attack (TIA), status post stroke, obesity, asthma, and cognitive disorder . . . ." (Tr. 20) At step three, the ALJ found Hartley's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 21)

The ALJ then analyzed Hartley's residual functional capacity (RFC). She found Hartley "had the residual functional capacity to perform medium[2] work . . . except the claimant should never use ladders, ropes and scaffolds." (Tr. 23) "She should avoid work hazards . . . and avoid concentrated exposure to irritants, dust and fumes." *Id*. "Mentally, the claimant has mild limitations in her ability to understand, remember and carry out simple instructions." *Id*. "She has mild limitations in her ability to make judgments on simple work-related decisions." *Id*. "The claimant has moderate limitations in her ability to understand, remember and carry out complex job instructions and with the ability to make judgments on complex work-related decisions." *Id*. "The claimant has moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting." *Id*.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "If someone can do medium work, we determine that he or she can also do sedentary and light work." *Id*.

- 8 -

1 At step four, the ALJ found Hartley was not able to perform her past relevant work. (Tr. 28) At step five, the ALJ found Hartley could work as a hand packager or dining room attendant. (Tr. 29) Accordingly, she found Hartley was not disabled "from September 16, 2007, the alleged onset date, through December 31, 2012, the date last insured . . . ." (Tr. 29)

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if she provides specific and legitimate reasons supported by substantial evidence

in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The ALJ in this case found that Hartley has the ability to perform medium work. *See* 20 C.F.R. § 404.1567. Before coming to this conclusion, she first considered the medical report of Fahlberg, who opined in March of 2008 that Hartley could perform only light work. (Tr. 459) The ALJ stated she gave Fahlberg's opinion only "limited weight" because he did not examine Hartley and because he "had a limited evidentiary record to consider than did the other medical sources of record." (Tr. 27)

1 Hartley argues that the ALJ failed to provide substantial evidence in support of her
2 decision to discount Fahlberg's opinion. The Commissioner argues to the contrary that the
3 ALJ's reasons were sufficient. The court finds that this argument masks an even larger
4 problem. The ALJ's decision does not provide substantial evidence for her ultimate conclusion
5 that Hartley can perform medium work. In other words, even if the ALJ properly discounted
6 Fahlberg's opinion that Hartley can only perform light work, the opinion of ALJ does not
7 provide substantial evidence that Hartley can perform medium work. Accordingly, the decision
8 of the Commissioner must be vacated and case must be remanded for further proceedings. The
9 court expresses no opinion on Hartley's alternate grounds for relief.

10 The ALJ assessed Hartley's residual functional capacity (RFC) and concluded that she
11 could perform medium work. (Tr. 23) Medium work is a category of work defined primarily
12 by its exertional requirements. "Medium work involves lifting no more than 50 pounds at a
13 time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §
14 404.1567(c). The ALJ concluded Hartley could perform medium work but did not provide
15 substantial evidence in support of her conclusion. This was error.

16 In her report, the ALJ stated generally that her "residual functional capacity assessment
17 is supported by the opinions of the State agency experts, the consultative examinations, and
18 medical evidence of record." (Tr. 27) This conclusory statement, however, does not explain
19 specifically what evidence the ALJ relied on in making her assessment. *See Tackett v. Apfel*,
20 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record [her] reasoning and
21 the evidentiary support for [her] interpretation of the medical evidence."); *Hajjar v. Colvin*,
22 2015 WL 162989, 6 (C.D.Cal. 2015) ("It is well settled that an ALJ must set out her reasoning
23 and the evidentiary support for her interpretation of the medical evidence, and may not render
24 her own medical opinion or substitute her own diagnosis for that of a physician.").

25 The ALJ is not a medical expert. She ordinarily must rely on the reports of the medical
26 experts contained in the record in order to reach a conclusion as to what level of work the
27 claimant can perform. It is not clear whether or not the ALJ did that in this case. *See Day v.*
28 *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (The ALJ is not a medical expert and may not

1 offer her own expert evaluation of the raw medical data.); *Nguyen v. Chater*, 172 F.3d 31, 35
2 (1st Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998); *Ferguson v. Schweiker*, 765
3 F.2d 31, 37 (3rd Cir. 1985); *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009); *see, e.g.,*
4 *Dumond v. Commissioner of Social Sec.*, 875 F.Supp.2d 500, 509 (W.D.Pa. 2012) (rejecting
5 the Commissioner's argument that "an ALJ is not required to rely on a medical opinion in
6 formulating a claimant's RFC.").

7 The record in this case contains three medical reports that bear directly on Hartley's
8 exertional ability. Fahlberg opined in March of 2008 that Hartley could perform only light
9 work. (Tr. 459) In October of 2008, Hirsch reviewed the record and affirmed Fahlberg's
10 assessment. (Doc. 558) In November of 2009, however, Kattapong opined that Hartley could
11 perform medium work. (Doc. 636)

12 In her report, the ALJ discussed only Fahlberg's opinion to which she ascribed "limited
13 weight." (Tr. 27) She did not discuss Hirsch's report or Kattapong's report at all. It is
14 therefore unclear whether or not she considered them when analyzing Hartley's RFC. This was
15 error. *See* 20 C.F.R. § 404.1527(e)(2). The ALJ must analyze the reports of the state medical
16 specialists. *Id*. She need not accept the conclusions expressed in the reports, but she must
17 explain how much weight she ascribed to the opinions and why. *Id*.; *see Nelsen v. Barnhart*,
18 2003 WL 297738, 3 (N.D.Cal. 2003) (citing Social Security Ruling 96-6p).

19 Here, the ALJ's silence is particularly problematic because, aside from Kattapong's
20 expert report, there does not appear to be anything in the record from which a lay person could
21 conclude that Hartley can perform medium work. Hartley's previous jobs were sedentary. (Tr.
22 48) She did not have to lift anything heavier than paper files weighing less than 10 pounds.
23 (Tr. 63, 311)  At the hearing, Hartley stated she could lift a basket of laundry that weighed 20
24 pounds. (Tr. 74)  This, however, is only evidence that she could do light work, not medium
25 work. *See* 20 C.F.R. § 404.1567.

26 It is certainly possible that the ALJ rejected Fahlberg's opinion and accepted Kattapong's
27 assessment that Hartley could do medium work. The ALJ, however, did not say that, and the
28

court cannot consider arguments the ALJ did not present herself. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

The ALJ's finding that Hartley can perform medium work is not supported by substantial evidence. *See, e.g., Helmer v. Astrue*, 2008 WL 4682552, 4 (N.D.Tex. 2008) (remanded "[b]ecause the ALJ's decision fails to indicate the evidence in the record relied upon in making the RFC assessment . . ."). Her conclusion at step 5 of the disability analysis that Hartley could work as a hand packager or dining room attendant, both medium work jobs, must be reversed. *See* (Tr. 29)

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order remanding the plaintiff's claim for further proceedings.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response.

DATED this 23rd day of April, 2015.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge